IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re: JOHN FLISS,

Debtor-Appellee,

v.

GENERATION CAPITAL I, LLC,

Appellant.

No. 19-cv-08187
Judge Franklin U. Valderrama

### MEMORANDUM OPINION AND ORDER

Appellant Generation Capital I, LLC (Generation Capital I) brings this appeal pursuant to 28 U.S.C. § 158(a)(1), from the Bankruptcy Court's disallowance of Generation Capital I's claim against debtor-appellee John Fliss (Debtor), sustaining Debtor's claim objection against Generation Capital I, and subsequent confirmation of the Debtor's Chapter 13 plan. R. 1, Not. Appeal.[1] For the reasons set forth below, the Court affirms the Bankruptcy Court's decisions.

### Background[2]

On or around April 22, 2009, borrowers Duraguard Services, LLC (Duraguard) and Polykmeric Solutions, LLC (Polykmeric) executed a promissory note in favor of lender Barrington Bank and Trust Company (Barrington Bank) in the principal

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

[2]The parties agree that the Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1).

amount of $200,000.00. R. 34, Debtor Appendix at CM/ECF 158[3], ¶ 1. Debtor, Mark E. Barr (Barr), Lawrence E. Wojciak, and The Sherry R. Wojciak Revocable Trust dated February 16, 1999 (the Trust) personally guaranteed the note. *Id.* ¶ 2.

On March 30, 2011, Generation Capital I was formed as a limited liability company. Debtor Appendix at CM/ECF 161, ¶ 19. The members of Generation Capital I and their percentage of interests consisted of Larry Wojciak, Trustee of the Lawrence E. Wojciak Restatement of Trust (98%), Sherry R. Wojciak, Trustee of the Sherry R. Wojciak Restatement of Trust (1%) and Matthew Wojciak (1%). *Id.* at CM/ECF 160, ¶ 17. Generation Capital II, LLC (Generation Capital II) was also formed as a limited liability company on March 30, 2011, of which the Trust owns 98% and Matthew Wojciak owns the remaining 2%. *Id.* at CM/ECF 161, ¶¶ 18, 20.

Duraguard and Polykmeric defaulted on the loan from Barrington Bank. R. 29-1, Appellant Appendix at A3. As a result, on May 16, 2011, Barrington Bank filed a Verified Complaint and Confession of Judgment against the Debtor and other defendants in the Circuit Court of Cook County (the State Court Action). Debtor Appendix at CM/ECF 158, ¶ 5.

On May 23, 2011, the Circuit Court of Cook County entered judgment against Debtor and co-defendants Mark E. Barr, Lawrence E. Wojciak, and the Trust, jointly and severally, in the amount of $208,639.95 (the State Court Judgment). Debtor Appendix at CM/ECF 159, ¶ 6. Between June and October of 2011, Barrington Bank

---

[3]The Court refers to the file-stamped CM/ECF number as Debtor has not page-numbered his Appendix as a whole.

recorded memoranda of its judgment against numerous properties owned by Debtor. R. 29, Appellant Brief at 2.

On or around February 24, 2012, Barrington Bank and Generation Capital I entered into a Note Sale and Assignment Agreement, pursuant to which all of Barrington Bank's right, title, and interest in the State Court Action was assigned, sold, and transferred to Generation Capital I. Debtor Appendix at CM/ECF 159, ¶ 7. The Note Agreement recited that in exchange for a $240,000.00 payment from Generation Capital I to Barrington Bank, Barrington Bank would assign to Generation Capital I all of its rights in the loan documents and the State Court Judgment. *Id.* at 8.

On February 26, 2012, Barrington Bank, Lawrence E. Wojciak, and the Trust entered into a settlement agreement to settle the State Court judgment (the Settlement Agreement). Debtor Appendix at CM/ECF 159, ¶ 9. The Settlement Agreement provided in relevant part that in consideration of the $240,000.00 payment by Lawrence E. Wojciak and/or the Trust, the State Court judgment would be settled. *Id.* at CM/ECF 159, ¶ 10. The Settlement Agreement further provided that upon receipt of the settlement payment, Barrington Bank would assign the loan documents to Generation Capital, LLC (not Generation Capital I). *Id.* at CM/ECF 160, ¶ 12. On February 24, 2012, Sherry Wojciak authorized a wire transfer of $240,000.00 to Barrington Bank from an account owned by Generation Capital II. *Id.* at CM/ECF 160, ¶ 13. But there was no evidence in the state court record that this

3

payment was ever made to Barrington Bank. *In re Fliss, Generation Capital I, LLC v. Fliss (First Generation Appeal)*, 586 B.R. 21, 23–24 (N.D. Ill. 2018).

On May 8, 2012, Generation Capital I was substituted in Barrington Bank's place as the party plaintiff in the State Court Action. Debtor Appendix at CM/ECF 160, ¶ 15. Debtor did not appeal this order. Appellant Brief at 8. In a separate lawsuit that Lawrence Wojciak had previously filed in the Circuit Court of Cook County, on October 24, 2012, he filed an amended complaint against Debtor, Mark Barr, Duraguard, Polymeric, and Autohause Garage, seeking equitable contribution against Debtor and other co-defendants. Debtor Appendix at CM/ECF 160, ¶ 16; Appellant Appendix at A5. This complaint was voluntarily dismissed on November 7, 2012. R. 9-3, Exh. F., State Court Determination Order at 2.

On November 17, 2014, Debtor and Barr filed a Motion for Determination in the State Court Action to determine what they owed based on Generation Capital I's filing of a motion to turnover assets against Debtor and Barr. Appellant Brief at 7; *First Generation Appeal*, 586 B.R. at 24. Debtor and Barr argued, among other things, that Debtor was not indebted to Generation Capital I and that Generation Capital I was not entitled to enforce the State Court Judgment against him. Appellant Brief at 7. On March 12, 2015, the court in the State Court Action denied the Motion for Determination, finding that the Settlement Agreement was never satisfied based on the lack of evidence that the payment from Lawrence Wojciak or the Trust had ever been made to Barrington Bank. *Id.* at 7–8; *First Generation Appeal*, 586 B.R. at 24. The court, as a result, found that the State Court Action was not settled and that the

4

release of liability between Barrington Bank, the Trust, and Lawrence Wojciak was void. *First General Appeal*, 586 B.R. at 24. The court held that the State Court Judgment remained open and Barrington Bank could sell the rights thereto, which it did on February 27, 2012. Appellant Brief at 7–8. Debtor did not appeal this order. *Id.* at 8.

On August 28, 2015, Debtor filed a voluntary petition for relief under Chapter 13 of Title 11 of the United States Code. Debtor Appendix at CM/ECF 161, ¶ 22. Debtor's Schedule D identified Generation Capital I as having a secured claim. Appellant Brief at 3. According to the Chapter 13 Plan (the Plan), the claim was secured by a memorandum of judgment recorded against real property but the collateral either had no value or was fully encumbered by higher priority liens. *First Generation Appeal*, 586 B.R. at 24.

On December 31, 2015, Generation Capital I timely filed a proof of clam which identified Generation Capital I as having a secured claim in the sum of $359,967.67. Appellant Brief at 8. On July 24, 2016, Debtor filed his objection to the claim, arguing that:1) the claim has been extinguished; 2) that Generation Capital I and two other entities are the alter ego of Larry Wojciak and the Trust; 3) Generation Capital I does not own the claim and 4) the claim is overstated. *Id.* at 8–9. Generation Capital I filed a response in which it argued that the Claim Objection should be denied because the State Court Judgment was not subject to challenge based on *res judicata*, the *Rooker-Feldman* doctrine, and full faith and credit. *Id.* at 4.

5

In December 2019, the Bankruptcy Court entered four opinions or orders: (i) on December 3, 2019, the Bankruptcy Court entered an opinion sustaining Debtor's claim objection, which denied Generation Capital I's claim in its entirety; R. 1-4; *see also In re Fliss (Bankruptcy Opinion)*, 609 B.R. 775 (Bankr. N.D. Ill. 2019); (ii) on the same day, the Bankruptcy Court entered a short-form order doing the same; R. 1-5; (iii) on December 4, 2019, the Bankruptcy Court entered a short-form order disallowing Generation Capital I's claim in its entirety; R. 1-6; and (iv) on December 9, 2019, the Bankruptcy Court entered a short-form order confirming the Plan. R. 1-7. On December 13, 2019, Generation Capital I appealed these orders to the Court. Not. Appeal.

## Standard of Review

Pursuant to the Bankruptcy Code, district courts have jurisdiction to review "final judgments, orders and decrees" issued by bankruptcy courts. 28 U.S.C. § 158(a)(1). District courts sit as appellate courts in this instance. *Dvorkin Holdings, LLC*, 547 B.R. 880, 886 (N.D. Ill. 2016) (internal citation omitted). They use a dual standard of review when deciding bankruptcy appeals. *Belson v. Olson Rug Co.*, 483 B.R. 660, 664 (N.D. Ill. 2012). A district court reviews a bankruptcy court's legal conclusions *de novo* and its factual findings for clear error. *Patel v. MS Int'l, Inc.*, 2021 WL 4355369, at *3 (N.D. Ill. Sept. 24, 2021) (internal citations omitted). "To the extent that the Bankruptcy Code commits a decision to the discretion of the [b]ankruptcy [c]ourt, that decision is reviewed for an abuse of discretion." *Dvorkin*, 547 B.R. at 886 (internal citation omitted). And a court abuses its discretion "when

its decision is premised on an incorrect legal principle or a clearly erroneous factual finding, or when the record contains no evidence on which the court rationally could have relied." *Id.* (quoting *In re Kmart Corp.*, 381 F.3d 709, 713 (7th Cir. 2004)).

## Analysis

Generation Capital I asserts that the Bankruptcy Court committed an error of law and/or abused its discretion by disallowing Generation Capital I's claim in its entirety and rejecting Generation Capital I's *Rooker-Feldman*, *res judicata*, and collateral estoppel arguments. Appellant Brief at 11–12. Alternatively, it asserts that the Bankruptcy Court committed an error of law and/or abused its discretion when it disallowed Generation Capital I's claim in its entirety based on a discovery sanction. *Id.* at 12. As a result, Generation Capital I argues that the Bankruptcy Court committed an error of law and/or abused its discretion by confirming the Plan over its objection. *Id.*

The Court begins its review with Generation Capital I's argument that the *Rooker-Feldman* doctrine barred the Bankruptcy Court's review of the State Court Judgment.

### I.  *Rooker-Feldman* Doctrine

Generation Capital I argues that even though it timely filed a proof of claim based on the State Court Judgment, the Bankruptcy Court violated the *Rooker-Feldman* doctrine by not only reviewing, but also in setting aside, the State Court Judgment. Appellant Brief at 14–17.

The *Rooker-Feldman* doctrine's name originates from two Supreme Court decisions, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *D.C. Ct. of App. v. Feldman*, 460 U.S. 462 (1983). *Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir. 2002) (internal citation omitted). The *Rooker-Feldman* doctrine precludes federal district court jurisdiction over cases "brought by state court losers challenging state court judgments rendered before the district court proceedings commenced." *Sykes v. Cook Cty, Cir. Ct. Prob. Div.*, 837 F.3d 736, 741–42 (7th Cir. 2016) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). "The rationale for the doctrine is that no matter how wrong a state court judgment may be under federal law, only the Supreme Court of the United States has jurisdiction to review it." *Id.* at 742 (internal citation omitted). It applies "when the state court's judgment is the source of the injury of which plaintiffs complain in federal court." *Harold v. Steel*, 773 F.3d 884, 885 (7th Cir. 2014) (internal citations omitted).

To determine whether *Rooker-Feldman* applies, a court must ask "whether the federal plaintiff is alleging that his injury was caused by the state-court judgment." *Mains v. Citibank*, 852 F.3d 669, 675 (7th Cir. 2017) (internal citation omitted). If so, the doctrine applies and the plaintiff's claim is barred. *Id.* On the other hand, if the claim "alleges an injury independent of the state-court judgment that the state court failed to remedy, *Rooker-Feldman* does not apply." *Id.* (same). "[E]ven federal claims which were not raised in state court, or that do not on their face require review of a state court's decision, may still be subject to *Rooker-Feldman* if those claims are inextricably intertwined with a state court judgment." *Sykes*, 837 F.3d at 742

8

(internal citation omitted). "The 'inextricably intertwined' determination hinges on whether the federal claim alleges that the injury was caused by the state court judgment, or alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy." *Id.* (same).

Generation Capital I contends that Debtor in his claim objection asked the Bankruptcy Court, in violation of the *Rooker-Feldman* doctrine, to review and set aside a state court decision, the State Court Judgment. Appellant Brief at 15. Generation Capital I points out that the Debtor was attempting to overturn the state court's rulings via the Bankruptcy Court. *Id.* at 15–16. Yet, notes Generation Capital I, Debtor did not appeal the state court ruling at issue to the state appellate court. *Id.* at 16. According to Generation Capital I, Debtor presented the same arguments before the Bankruptcy Court as he did in the State Court Action: that Barrington Bank's release of Lawrence Wojciak and the Trust in exchange for the $240,000.00 payment released all joint obligors; that Lawrence Wojciak filed a second state court lawsuit pursuant to which he sought equitable contribution from Debtor; and that allegations from the second amended complaint in that second lawsuit constituted judicial admissions. *Id.*

Debtor responds that, contrary to Generation Capital I's suggestion, the *Rooker-Feldman* doctrine is inapplicable because he is not seeking any relief from an injury caused by the State Court Judgment. R. 33, Resp. at 11. Debtor insists that his Objection presented "independent claims." *Id.* Debtor maintains that he simply asked the Bankruptcy Court to disallow Generation Capital I's claim, a task within the

9

Bankruptcy Court's subject matter jurisdiction. *Id.* at 12 (citing *R & J Constr. Supply Co., Inc. v. Juma*, 542 B.R. 237, 242 (N.D. Ill. 2015) ("In sum, regardless of whether the state court judgment bars Juma from rearguing certain issues, it did not deprive the bankruptcy court of subject matter jurisdiction to adjudicate Supply's adversary claim. Therefore, the *Rooker-Feldman* doctrine has no application in this case.")). Debtor points out that the Bankruptcy Court itself acknowledged the *Rooker-Feldman* doctrine but noted that it was not reviewing the State Court Judgment in violation of the doctrine, instead looking behind the judgment in determining the allowance or disallowance of Generation Capital I's claim. *Id.* at 13–14. Debtor posits that the Bankruptcy Court was not reviewing the State Court Judgment in violation of that doctrine, but rather held that the debt was extinguished by the merger doctrine, relying on *Access Realty Grp., Inc., v. Kane*, 146 N.E.3d 1 (Ill. App. Ct. 2019). *Id.* at 14. Thus, Debtor contends that, according to the Bankruptcy Court, the court in the State Court Action had not considered the merger doctrine. *Id.*

The Court finds the *Rooker-Feldman* doctrine inapplicable here. The *sine qua non* of the *Rooker-Feldman* doctrine is a federal court plaintiff asserting a claim in federal court that seeks to overturn or reverse an unfavorable state court judgment. That is not the case here. In the State Court Action, Debtor and Barr filed a Motion for Determination to ascertain what they owed with respect to the State Court Judgment. Debtor and Barr argued that they did not owe Generation Capital I any monies and that Generation Capital I was not entitled to enforce any judgment in the State Court Action because the State Court Judgment had been extinguished by the

$240,000.00 payment to Barrington Bank. *First Generation Appeal*, 586 B.R. at 24. The state court disagreed, finding that the Settlement Agreement was never satisfied, the litigation had not been settled, and the judgment against Debtor and Barr remained open. *Id.* Debtor subsequently filed a Chapter 13 petition and moved to disallow Generation Capital I's claim. That is, the Debtor did not file a claim in federal court that sought to reverse the state court judgment. Put differently, Debtor is not asserting that his injury was caused by the state court judgment. As in *Juma*, Debtor here did not file a federal lawsuit attacking the State Court Judgment or the procedures used to obtain the judgment. 542 B.R. at 242. Debtor "is simply defending himself against an adversary complaint filed by one of his creditors." *Id.*

The Court finds that the Bankruptcy Court did not err in holding that the *Rooker-Feldman* doctrine did not apply to its rejection and disallowance of Generation Capital I's claim.

## II. *Res Judicata*

Generation Capital I posits that even if the *Rooker-Feldman* doctrine is inapplicable, the doctrines of *res judicata* and collateral estoppel barred Debtor from prosecuting his claim objection. Appellant Brief at 17.

"Even if *Rooker-Feldman* does not bar a claim, when there is a prior state-court judgment that appears to cover the same transaction or the same issues as the later federal case, the possibility exists that *res judicata* may apply." *Mains*, 852 F.3d at 675. *Res judicata,* also known as claim preclusion, "prevents parties from raising issues that could have been raised and decided in a prior action—even if they were not actually litigated." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.,*

11

140 S. Ct. 1589, 1594 (2020). Because the judgment at issue is from an Illinois state court, Illinois preclusion principles apply. *See Rose v. Bd. of Election Comm'rs for City of Chi.*, 815 F.3d 372, 374 (7th Cir. 2016).

In Illinois, the doctrine of *res judicata* applies where three elements are satisfied: "(1) a final judgment on the merits rendered by a court of competent jurisdiction, (2) the same cause of action, and (3) the same parties or their "privies."" *Chi. Title Land Trust Co. v. Potash Corp. of Saskatchewan Sales Ltd.*, 664 F.3d 1075, 1079 (7th Cir. 2011) (citing *Hudson v. City of Chi.*, 889 N.E.2d 210, 215 (Ill. 2008)). The court must also consider whether the plaintiff had a full and fair opportunity to litigate in the prior proceeding. *Rose*, 815 F.3d at 376. The Court addresses each element in turn.

### a. Identity of Parties

When considering whether the same parties exist, if the parties are different, "privity is said to exist between parties who adequately represent the same legal interests. For purposes of [*res judicata*], it is the identity of interest that controls in determining privity, not the nominal identity of the parties." *Cnty. of Cook, Ill. v. Wells Fargo & Co.*, 314 F. Supp. 3d 975, 997 (N.D. Ill. 2018) (quoting *Lutkauskas v. Ricker*, 28 N.E.3d 727, 739 (Ill. 2015)).

Generation Capital I contends that this element is satisfied as the parties are the same in both actions—Debtor was a defendant in the State Court Action and is the Debtor in this action. Appellant Brief at 20. Further, Generation Capital I

substituted in as a plaintiff in the State Court Action and is the claimant in this action. *Id.*

Debtor counters that the parties are not identical as the State Court Determination Order only referenced Generation Capital I as the plaintiff, Debtor, Barr, and Mary Fliss (as an adverse claimant). Debtor Brief at 19. Debtor points out that in the Bankruptcy Court, he argued that Generation Capital I, Generation Capital, Generation Capital II, Lawrence Wojciak, and the Trust should be considered alter egos and those additional parties were not before the state court as putative plaintiffs. *Id.*

The Court finds that the same parties exist as both Generation Capital I and Debtor were parties in the State Court Action and were parties before the Bankruptcy Court. It matters not that the alleged alter egos of Generation Capital I were not parties in the State Court Action because they were not parties to the claim before the Bankruptcy Court.

### b. Final Judgment

"An order is final if it either terminates the litigation between the parties on the merits or disposes of the rights of the parties, either on the entire controversy or a separate branch thereof." *Kane v. Bank of Am., N.A.*, 338 F. Supp. 3d 866, 871 (N.D. Ill. 2018) (quoting *Wilson v. Edward Hosp.*, 981 N.E.2d 971, 978 (Ill. 2012)). That is, a final order for preclusion purposes, is one that is both final and appealable. "The 'final and appealable' standard governing [*res judicata*] is akin to the standard used

13

in Illinois to determine whether an appellate court has jurisdiction to review a trial court's order." *Id.* (internal citation omitted).

Generation Capital I argues that the Bankruptcy Court erred in (a) finding that the State Court Judgment, a confession of judgment, was not a final judgment and (b) its preclusive effect would therefore be limited. Appellant Brief at 18 (citing *Bankruptcy Opinion*, 609 B.R. at 783). Generation Capital I insists that while it was not litigated, the conclusion of a prior lawsuit via a consent judgement does not prevent it from having a *res judicata* effect *Id.* (citing *Martin v. McDonald's Sys., Inc.*, 598 F.2d 1079, 1083 (7th Cir. 1979)). Generation Capital I further observes that Debtor neither appealed the State Court Judgment or the order substituting Generation Capital I as the party-plaintiff in the State Court Action, further supporting its contention that the State Court Judgment is a final judgment for *res judicata* purposes. *Id.* at 19. Generation Capital I also maintains that the State Court Determination Order is a final judgment. Therefore, it reasons that both orders constitute final judgments for *res judicata* purposes. *Id.*

Debtor asserts that the State Court Determination Order was not a final judgement as nothing in the order reflected that it was a final and appealable order. Debtor Brief at 17–18. Debtor further insists that the State Court Determination Order lacked the "no just reason for delaying the appeal" language required by Illinois Supreme Court Rule 304(a). *Id.* Debtor does not advance a position on whether the State Court Judgment constituted a final judgment.

The Court agrees with Generation Capital I that the State Court Judgment, which is a confession of judgment, is a final judgment for *res judicata* purposes. *See Elliott v. LRSL Enters., Inc.*, 589 N.E.2d 1074, 1077 (Ill. App. Ct. 1992) (order entered by consent of parties has same *res judicata* effect as judgment entered after contest). Indeed, the Bankruptcy Court acknowledged that the State Court Judgment "may qualify for a [*res judicata*] bar as to the matters resolved therein, the existence of the debt and its amount." 609 B.R. at 783. Yet, both parties ignore the Bankruptcy Court's rationale behind limiting the State Court Judgment's preclusive effect under *res judicata*. In the Bankruptcy Opinion, the Bankruptcy Court stated that "[t]he application of [*res judicata*] to dischargeability actions is improper as such claims can arise only in the context of a bankruptcy proceeding . . . Because the issues in dischargeability actions extend beyond liability, claim preclusion under [*res judicata*] does not apply." *Bankruptcy Opinion*, 609 B.R. at 783 (citing *Cora v. Jahrling*, 514 B.R. 565, 570 (Bankr. N.D. Ill. 2014)). Moreover, the bar "covers issues that were raised as well as issues that could have been raised." *Id.* The Bankruptcy Court found that the merger doctrine supported sustaining Debtor's claim objection, noting that more than liability was at issue under the claim objection. *Id.* It went on to find that the State Court Judgment qualified for *res judicata* effect but only as to establishing that Debtor owed the debt and the debt amount. Because the judgment was obtained by confession and not actually litigated, it found its preclusive effect limited. The Court agrees with the Bankruptcy Court that the State Court Judgment has limited preclusive effect—only as to the existence of the debt and its amount.

But, the Court finds that the State Court Determination Order is not a final judgment because it was not expressly deemed a final and appealable order under Illinois Supreme Court Rule 304(a). *Kane*, 338 F. Supp. 3d at 872–73. Pursuant to Illinois Supreme Court Rule 304(a), "[i]f multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims *only if the trial court has made an express written finding* that there is no just reason for delaying either enforcement or appeal or both." Ill. S. Ct. R. 304(a) (emphasis added). Accordingly, the State Court Determination Order does not have preclusive effect for the purposes of *res judicata*, and Generation Capital I's *res judicata* argument as it relates to the State Court Determination Order fails on this factor alone.

While the Court could end its analysis at this juncture, for the sake of completeness, it addresses the final element.

### c. Identity of Causes of Action

Illinois uses a transactional test to determine what constitutes the same cause of action. *Chi. Title Land Trust Co.*, 664 F.3d at 1079. Under this test, "separate claims will be considered the same cause of action for purposes of [*res judicata*] if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *Id.* at 1079–80 (internal quotation marks and citation omitted). "[W]hat constitutes a 'single group of operative facts' is 'determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and

16

whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Kane*, 338 F. Supp. 3d at 873 (internal citation omitted).

Generation Capital I argues that there is an identity of causes of action as Debtor argues the identical issue in his claim objection and his and Barr's Motion for Determination in the State Court Action, that the State Court Judgment is unenforceable. Appellant Brief at 20. Yet, Generation Capital I advances no further argument as to this factor, and the Court has determined that the State Court Determination Order cannot have preclusive effect under *res judicata* because it does not constitute a final judgment.

Debtor retorts that not all of the issues raised in his claim objection were considered in the State Court Determination Order, specifically that Generation Capital I, Generation Capital, and Generation Capital II, Lawrence Wojciak, and the Trust were alter egos, that Generation Capital I does not own the claim, and that the claim is overstated. *Id.* at 18.

The Court agrees with Debtor that an identity of causes of action does not exist because Debtor raised the following issues in his claim objection which could not have been litigated in the State Court Action and which the court in the State Court Action did not rule upon in the State Court Determination Order: that Generation Capital I, Generation Capital, Generation Capital II, Lawrence Wojciak, and the Trust were alter egos of each other, and that Generation Capital I does not own the claim. *See* Debtor Brief at 18.

In sum, Generation Capital I has failed to show that all three elements required for *res judicata* are satisfied with regard to both orders. Accordingly, the Court finds that the Bankruptcy Court did not err in holding that *res judicata* did not bar Debtor's claim objection.

### III.    Collateral Estoppel

Generation Capital I next asserts that Debtor was barred by the doctrine of collateral estoppel from raising the same issues adjudicated by the state court in the Bankruptcy Court. Appellant Brief at 21–22.

Again, because this matter presents a question regarding the collateral estoppel effect of Illinois state court orders, the Court applies Illinois laws of collateral estoppel to the orders. *In re Burke*, 398 B.R. 602, 621 (N.D. Ill. Bankr. 2008). A four-part test exists to determine whether collateral estoppel applies under Illinois law: "First, the issue decided in the prior adjudication must be identical with the one presented in the suit in question. Second, there must have been a final judgment on the merits in the prior adjudication. Third, the party against whom estoppel is asserted must have been a party or in privity with a party to the prior adjudication. [Fourth and lastly], the party sought to be bound must actually have litigated the issue in the first suit and a decision on the issue must have been necessary to the judgment in the first litigation." *Juma*, 542 B.R. at 243 (quoting *Am. Family Mut. Ins. Co. v. Savickas*, 739 N.E.2d 445, 451 (Ill. 2000)). "Even when the threshold requirements are satisfied, the doctrine should not be applied unless it is clear that no unfairness will result to the party sought to be estopped." *Id.* (same).

Generation Capital I points out that in his claim objection, the Debtor raised identical arguments as those set in in his prior Motion for Determination. Appellant Brief at 21. In the State Court Action, the court rejected Debtor's argument that the State Court Judgment had been extinguished, the same argument he raised in his claim objection. *Id.* at 21–22. The court in the State Court Action also rejected Debtor's argument that allegations in Lawrence E. Wojciak's second amended complaint were judicial admissions that were binding upon Lawrence E. Wojciak. *Id.* at 22.

Debtor advances the same arguments in opposition to collateral estoppel as he did against the application of *res judicata*. *Supra* Section II. Debtor points out that the Bankruptcy Court noted that the State Court Judgment did not address the merger issue. *Bankruptcy Opinion*, 609 B.R. at 784. The Bankruptcy Court found that allowing collateral estoppel to bar Debtor's claim objection "would promote form over substance to allow Lawrence Wojciak (or the Lawrence E. Wojciak Trust of which he is trustee) to use separate entities formed in 2011 to reorder the Debtor's obligations." *Id.* It held that looking behind the debt was not prohibited by collateral estoppel because the merger doctrine issues of who the real plaintiff and defendants were had not been litigated. *Id.* Generation Capital I contends that Debtor raised the merger doctrine in his Motion for Determination in the State Court Action. Appellant Brief at 23.[4] Yet, as the Bankruptcy Court noted, the state court did not consider the

_____

[4]Generation Capital I discusses the Bankruptcy Court's analysis of the merger doctrine as it applies to Debtor's claim objection in its reply (R. 39, Reply), but *does not* contest its substantive analysis or outcome in its opening brief. Therefore, the Court does not consider

merger doctrine in its underlying decision on that motion either. *Bankruptcy Opinion*, 609 B.R. at 785. In that order, the state court found that the Settlement Agreement was never satisfied based on the lack of evidence that the payment from Lawrence Wojciak or the Trust had ever been made to Barrington Bank. Appellant Brief at 7–8; *First Generation Appeal*, 586 B.R. at 24. The state court, as a result, found that the State Court Action was not settled and that the release of liability between Barrington Bank, the Trust, and Lawrence Wojciak was void. *First Generation Appeal*, 586 B.R. at 24.

The Court agrees with the Bankruptcy Court that the state court did not use the merger doctrine to issue the State Court Determination Order and that it was not adjudicated as part of that order. No matter, as the State Court Determination Order itself was not a final judgment for the same reasons the Court articulated above. *Supra* Section II. The Court also agrees with the Bankruptcy Court that the state court did not consider the merger doctrine in the State Court Judgment either. As such, the Court finds that the Bankruptcy Court did not err in holding that collateral estoppel did not bar Debtor's claim objection.

The Court affirms the Bankruptcy Court's disallowance of Generation Capital I's claim in its entirety and sustaining of Debtor's claim objection to that claim. Based on this, the Court need not address Generation Capital I's argument regarding the discovery sanction, which the Bankruptcy Court found was an alternative ground justifying disallowance of Generation Capital I's claim. *See* Appellant Brief at 12. Nor

---

it. *See Narducci v. Moore*, 572 F.3d 313, 323 (7th Cir. 2009) (Generally, the Court would not consider an argument or case asserted for the first time on reply.).

does the Court need to address Generation Capital I's argument regarding confirmation of the Plan. *See* Appellant Brief at 27 (requesting the Court to vacate the Bankruptcy Court's order only if the Court reverses the Bankruptcy Court's disallowance of Generation Capital I's claim).

## Conclusion

For the reasons stated above, the Court finds that the Bankruptcy Court did not err in disallowing Generation Capital I's claim in its entirety, sustaining Debtor's claim objection, or confirming Debtor's Chapter 13 plan over Generation Capital I's objection. Accordingly, the Court affirms the Bankruptcy Court's December 3, 2019 opinion sustaining Debtor's claim objection, which denied Generation Capital I's claim in its entirety; the Bankruptcy Court's December 3, 2019 order sustaining Debtor's claim objection and disallowing Generation Capital I's claim; and the Bankruptcy Court's December 9, 2019 order confirming Debtor's bankruptcy plan.

Dated: February 18, 2022

United States District Judge
Franklin U. Valderrama

21